**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, ET AL., <br><br> PLAINTIFFS, <br><br> V. <br><br> DAVID BERNHARDT, SECRETARY, U.S. DEP'T OF THE INTERIOR, ET AL., <br><br> DEFENDANTS. | CASE NUMBER 1:2020-CV-3654-RC |

**MOTION TO INTERVENE**

Pure Helium, LLC[1] submits this Motion to Intervene and Memorandum in Support under Federal Rule of Civil Procedure 24.[2] Pure Helium requests the Court grant its intervention as of right, or in the alternative, permissive intervention.

---

[1] As explained in the Declaration of Kirby Carroll in support of this motion, Ex. A, Pure Helium, LLC (f/k/a Aspect Helium, LLC) entered into a Participation Agreement with Twin Bridges Resources, LLC on August 13, 2020, through which Twin Bridges sold Pure Helium an 88.5% working interest in the federal helium lease and contract, and the two SITLA leases in exchange for certain payments. Pure Helium has recorded this interest with Emery County. The BLM has consented to the assignment of the federal helium contract to Pure Helium. The companies have submitted to SITLA documents assigning the SITLA leases to Pure Helium. The companies have prepared and intend to submit next week documents to the BLM to assign the federal lease to Pure Helium. The two companies have also entered into a Joint Operating Agreement. For efficiency of understanding, this declaration refers to Pure Helium when referencing the companies.

[2] As required under L. Civ. R. 7(m), on December 18, 2020, counsel for Pure Helium conferred by telephone with counsel for Plaintiffs and counsel for Federal Defendants. Counsel for Plaintiffs indicated that Plaintiffs take no position on the motion until they have had an opportunity to review the motion. Counsel for Federal Defendants indicated that Federal Defendants take no position on the motion.

## MEMORANDUM IN SUPPORT

Plaintiffs filed this action purportedly to set aside the Bureau of Land Management's (BLM) 2018 decision to offer, sell, and issue a federal lease in Emery County, Utah. Compl., ECF No. 1. However, Plaintiffs' Complaint makes clear their real concern is not actually the sale of a federal lease over two years ago, in a lease sale that many of these Plaintiffs already challenged in the District of Utah,[3] and for which the BLM is already conducting supplemental environmental review. *See* Compl. at 4 n. 1. Rather, Plaintiffs' real concern is the BLM's possible future approval of Pure Helium's rights-of-way applications[4] that the BLM is currently reviewing in the "Twin Bridges Bowknot Helium Project Administrative Draft Environmental Assessment" (Bowknot Helium Project Draft EA or Draft EA).[5] The BLM has not issued a decision or final agency action associated with the Bowknot Helium Project Draft EA.

Pure Helium has been involved in the development of the challenged federal lease, which has taken years of review, analysis, and planning. Any decision to delay, set aside, or modify the decision will have significant impacts on Pure Helium's legally protectable interest in the development of the challenged federal lease and its SITLA leases.

---

[3] *See* Ex. B, *Friends of Cedar Mesa v. U.S. Dep't of Interior*, No. 4:19-cv-00013-DN, ECF No. 51 (March 2, 2020, order dismissing cases as moot); *Living Rivers v. Hoffman*, No. 4:19-cv-00074-DN, ECF No. 17 (March 19, 2020, notice of voluntary dismissal).

[4] That this is Plaintiffs' real concern is the Motion for Preliminary Injunction, ECF No. 9, filed today, seeking to enjoin a yet-to-be approved BLM decision on the Bowknot Helium Project. In the Memorandum in Support, Plaintiffs acknowledge that the BLM's pending approval likely will not involve drilling of the federal lease, but inexplicably claim that arguments supporting their likelihood of success on the merits regarding the NEPA review conducted in issuing the federal lease merit this Court enjoining the BLM's approval of a project to develop the SITLA leases. ECF No. 9-1, at 34.

[5] Found at: https://eplanning.blm.gov/public_projects/2001542/200383490/20028429/250034631/DOI-BLM-UT-G020-2020-0033-EA - Public Comment Period.pdf.

Plaintiffs' complaint is, at bottom, a premature challenge to the yet-to-be issued federal decision on the Bowknot Helium Project Draft EA, which seeks certain federal authorizations in order for Pure Helium to develop its SITLA leases as the first phase of the development. The alleged injuries cited in Plaintiffs' complaint stem from development of the federal lease. *See, e.g.*, Compl. ¶ 5, 17-19. However, even if the BLM approves Pure Helium's application to develop the federal lease, the company has no imminent plans to develop the federal lease. Carroll Decl. ¶9. As the Bowknot Helium Project Draft EA clearly demonstrates, the company's immediate plans are to develop its valid existing rights as to the SITLA leases, which are outside the boundaries of any designated wilderness. *See* Draft EA at 6 (proposing to drill a well targeting the helium formation "directly under this SITLA lease"). While the company has sought subsurface rights-of-way to cross federal land (also under consideration in the Bowknot Helium Project Draft EA) to access these SITLA leases, all rights-of-way and any surface disturbance would also be outside the boundaries of the designated wilderness. Draft EA at 2. Development of the SITLA leases is also consistent with the Congressional intent expressed in the designation of the Labyrinth Canyon Wilderness Area:

> Congress does not intend for the designation of the wilderness areas to create protective perimeters or buffer zones around the wilderness areas. . . . The fact that nonwilderness activities or uses can be seen or heard from areas within a wilderness area shall not preclude the conduct of those activities or uses outside the boundary of the wilderness area.

133 Stat. 580, 673, 116 P.L. 9 (March 12, 2019).

Should the Plaintiffs succeed in this case, Pure Helium's ability to develop not only its federal lease, but its SITLA leases, may be impaired because Plaintiffs have committed to amend their complaint to challenge authorizations unrelated to the contested federal lease, but related to

development of the SITLA leases. *See* Compl. at 4 n.1. Therefore, the Court should grant Pure Helium's motion to intervene.

## FACTUAL BACKGROUND

Pure Helium holds three mineral leases in Emery County, Utah. Draft EA at 1. Two leases are with SITLA, purchased in 2015 and 2016. *Id*. Pure Helium purchased the other lease on December 11, 2018 in a BLM lease sale. *Id*. On February 18, 2020, Pure Helium and the BLM entered into a Contract for Extraction and Sale of Federal Helium pursuant to its federal lease. *Id*. *See also* 50 U.S.C. § 167.

On March 12, 2019, (three months after Pure Helium purchased its federal lease), Congress enacted the John D. Dingell, Jr. Conservation, Management, and Recreation Act (Dingell Act), 133 Stat. 580, 116 P.L. 9, which, in relevant part, designated over 1.3 million acres of land as a Wilderness Area, called the Labyrinth Canyon Wilderness. 133 Stat. 671-72. Through an eleventh hour amendment to the Act, made without consultation with SITLA or other stakeholders, Pure Helium's federal lease is within this Wilderness Area, and its SITLA leases are surrounded by, but outside of the Wilderness Area. *See id* (designating "Certain Federal land" as wilderness).

Pure Helium now intends to develop its valid existing rights to the SITLA leases it purchased in 2015 and 2016. Notwithstanding the access rights guaranteed to SITLA parcels,[6] Pure Helium has gone to great lengths to carefully design a development scenario that includes no surface disturbance of the Labyrinth Canyon Wilderness Area. *See* EA at G-7-8. In fact, Pure

---

[6] *State of Utah v. Andrus*, 486 F. Supp. 995, 1011 (D. Utah 1979) ("[T]he court holds that Utah does have a right of access to state school trust lands. That right is subject to federal regulation when its exercise requires the crossing of federal property. Such regulation cannot, however, prohibit access or be so restrictive as to make economic development competitively unprofitable.")

Helium delayed its project for nearly a year while it negotiated with Plaintiff, SUWA, about the Project. While the negotiations did not result in a final agreement, the project configuration that Pure Helium proposed, and which the BLM is currently reviewing, is the same project configuration SUWA recommended to allow for development of Pure Helium's valid existing rights, while minimizing potential impacts on the wilderness. *See* Ex. C, Letter Agreement between S. Bloch and R. Watson, March 19, 2020.

To access the SITLA leases and begin preliminary testing of the helium resource, the company plans to use and make minor improvements[7] to an existing road, Emery County Spur 1025, that is outside of the wilderness area. Draft EA at 6. It will use the end of the spur road to construct a well pad, also outside of the wilderness area. The company will then drill an exploratory well. *Id*. If sufficient quality and quantity of helium-bearing gas is produced, then the company would develop up to six additional wells from the same well pad. *Id*. Three pipelines and one conduit will be installed, also along the existing county spur road and outside the wilderness. *Id*.

## LEGAL BACKGROUND

This Circuit has held that qualification for intervention as of right depends on the following four factors: (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is

---

[7] To minimize surface disturbance, road improvements during the testing phase will be limited to grading, leveling, and curve reduction efforts. Installation of culverts is not anticipated. The road would maintain its 18-foot-wide travel surface. A water hauling and spreading truck will be used to keep dust minimized. Draft EA at G-1.

adequately represented by existing parties." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citation omitted). In addition, a party seeking to intervene as of right must also demonstrate it has standing under Article III of the Constitution. *Id*. at 732.

## ARGUMENT

I.      **Pure Helium is entitled to intervene as of right.**

The Court should grant Pure Helium's motion to intervene as of right because it meets all four criteria under Fed. R. Civ. P. 24(a). The company's motion is timely, it has a strong interest in maintaining and developing its leases which will be impaired if Plaintiffs succeed in this case, and the existing parties cannot adequately represent the company's interests.

A. **Pure Helium has standing.**

To establish Article III standing, a prospective intervenor must show an injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit." *Fund for Animals*, 322 F.3d at 735.

Pure Helium has standing in this case because it holds a valid federal lease and contract for exploratory helium. This interest is directly related to the decision Plaintiffs challenge. *See, e.g.*, Compl. 35 ¶ 1, 4, 5, 6. Plaintiffs' assertions in their complaint and the relief sought could harm the company's specific economic and property interests because, should Plaintiffs prevail, Pure Helium's development of its leases could be delayed, modified, or potentially prohibited, thereby jeopardizing its significant financial investment in the area. *See* Carroll Decl. ¶¶ 7, 8. A decision denying Plaintiffs' claims would redress injury to the company. Thus, Pure Helium has standing here.

**B.  Pure Helium's motion is timely.**

To determine whether a motion to intervene is timely, courts may consider: "(a) the time elapsed since the inception of the action, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights." *WildEarth Guardians v. Jewell*, 320 FR.D. 1, 3 (D.D.C. 2017) (citation omitted).

Pure Helium motion is timely. Plaintiffs filed their complaint only four days ago. The company's intervention will, therefore, not cause delay, nor will it harm or prejudice any existing party. *See Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (describing potential prejudice as the core of the timeliness factor). The motion to intervene is timely.

**C.  Pure Helium has a strong interest in this litigation.**

This Circuit has held that if a court concludes a proposed intervenor has constitutional standing, then that "is alone sufficient to establish that the [movant] has an interest relating to the property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 735 (citation omitted). As demonstrated above, Pure Helium has a strong interest in the protection and development of its federal lease and contract. *See Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit . . . ."). A decision in Plaintiffs' favor could delay, modify, or potentially prohibit Pure Helium's ability to develop its leases, causing significant financial impacts on the company. For all these reasons, Pure Helium is seriously concerned with the claims at issue in this case and has strong interests at risk justifying intervention. *Theodore*

*Roosevelt Conservation P'ship*, 605 F. Supp. 2d 263, 269 (D.D.C. 2009); *WildEarth Guardians*, 368 F. Supp. 3d 41, 55 (D.D.C. 2019).

**D.  Judgment in favor of Plaintiffs would impair Pure Helium's interests.**

Whether a proposed intervenor is so situated that the disposition of an action may impair its ability to protect its interest is determined by looking at the practical consequences of denying intervention. *Akiachak Native Community v. Dep't of Interior*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008). Here, Pure Helium would suffer a concrete injury in fact if the case were decided as Plaintiffs request because the company's ability to protect and develop its federal lease would be significantly harmed. Further, if the Court grants the relief Plaintiffs request, then the company's substantial financial investment could be threatened. *See* Carroll Decl. ¶¶ 7, 8. Moreover, the practical consequences of denying intervention to the company would be serious. *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). If not allowed to intervene here, Pure Helium would have little ability after the fact to remedy these harms. Its involvement now, in this lawsuit, therefore minimizes future disputes and potential litigation to protect the company's interests at issue in this case. *Id.* at 700; *Natural Res. Def. Council v. Costle*, 561 F.2d 901, 911 (D.C. Cir. 1977).

**E.  The existing parties cannot adequately represent Pure Helium's interests.**

The existing parties cannot adequately represent Pure Helium's interests in this case. "The burden of showing that the representation of the existing parties 'may be inadequate' is 'minimal.'" *WildEarth Guardians*, 320 F.R.D. at 4 (quoting *Fund for Animals*, 322 F.3d at 735). A movant need only show representation of its interests "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972). *See also Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (describing requirement as "not onerous"); *United States v.*

*Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear the party will provide adequate representation for the absentee"). Several cases in this circuit have permitted intervention by mineral lease holders when the federal government was already a party. *See, e.g.*, *S. Utah Wilderness All. v. Norton*, 2002 U.S. Dist. LEXIS 27414 (D.D.C. June 28, 2002); *Theodore Roosevelt Conservation P'ship*, 605 F. Supp. 2d at 269; *WildEarth Guardians*, 368 F. Supp. 3d at 55.

In addition, this court has "often concluded that governmental entities do not adequately represent the interest of aspiring intervenors." *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 38 (D.D.C. 2007). Here, the Federal Defendants' duties run to the interests of the American public as a whole, while Pure Helium has specific interests in protecting its valid existing rights, developing its federal and SITLA leases and securing long-term contracts for helium.

In sum, the existing parties cannot adequately represent Pure Helium's interests and therefore the Court should grant its intervention as of right.

## II.      In the alternative, the Court should grant permissive intervention.

If the Court does not grant Pure Helium's intervention as of right, it should nonetheless allow Pure Helium to intervene permissively. The Court has discretion to grant intervention to any party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Pure Helium's defense of its valid mineral rights shares common questions of law and fact with the main action. Moreover, the motion is timely and will not unduly delay or prejudice the adjudication of the claims in this matter, as required by Rule 24(b). Thus, the Court should grant permissive intervention if it does not allow Pure Helium to intervene as of right.

Case 1:20-cv-03654-RC   Document 17   Filed 12/18/20   Page 10 of 10


**CONCLUSION**

For the foregoing reasons, the Court should grant Pure Helium's motion to intervene as of right. In the alternative, Pure Helium should be allowed permissive intervention.

Respectfully submitted this 18th day of December, 2020.

By: */s/ Alison D. Garner*
Alison D. Garner
*Attorney for Proposed Intervenor-Defendant*
DORSEY & WHITNEY LLP
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
garner.alison@dorsey.com